Correct. All right, good. Case number 20-4128 USA v. Clayton Hall and 20-4144 USA v. Gregory Franklin II. Mr. Jenkins for the appellant, you may proceed. Esteemed panelists, James A. Jenkins on behalf of the appellant Clayton Hall. I'll have a brief 10 minutes with a reservation of 5 and I understand my colleague has asked for 11 minutes with 4 for rebuttal. Clayton Hall has been sentenced to 360 odd months in the federal correction facility, which is probably three times at least, and that's the minimum sentence he was given in federal court, but it's at least three times what he could have gotten in the maximum sentencing under state court law. And I know that's probably inappropriate here, but I'm asking this reviewing court to look at this matter as an abuse of power. Yes. Explain to me why. Because although it's the minimum within the guideline range, Judge Nugent failed to consider an extremely terrible upbringing this young man had. Clayton Hall has, in addition to diabetes. And did you remind me, I know you probably, you weren't counsel below, right? Yes, I was. You were. Did you object? Absolutely. There was objections raised in the response to the pre-sentence report as well as in my sentencing memorandum. Right. And once he said he considered all of that, did you object it? Did you enter an abostic objection? I did not enter an abostic objection, but I. Go ahead, I'm sorry. I apologize. I don't believe that should be the lynchpin for whether or not there is an abuse of discretion. Well, it's already been raised, and the trial court did ask, aside from what I've already heard in objections, which came by way of my objections to the probation officer and in the sentencing memorandum, that should certainly be adequate to cover the apostate. Are you saying that he didn't consider the upbringing at all? Is that your argument? I feel it's an abuse of discretion that he didn't actually apply it in his sentencing for a downward departure as recommended by probation. Okay, but there's a difference between not considering it and considering it but not applying it. I don't doubt that he considered it, but I believe it was an abuse. So that's not a procedural objection, it's a substantive. I mean, this goes to the apostate question in my mind, I guess. Are you saying it's just substantively unreasonable? Yes, yes. Okay. Procedurally right. I did not make the objection, but the court... Those factors were in his pre-sentence report, right, about his lack of a male role model. They were, they were. About his mental health issues. Correct, I appreciate you bringing that up, that's absolutely correct. And as to the... And the district court said he considered the entirety of the pre-sentence report. Yes, he did. Yes, he did. As to the... That's an objection. That was placed on the record and I suggest that... If I may, excuse me. Is this all right with the mask? Yeah. I'm vaccinated, so thank you. It bears repeating, I believe, that a single invidiously discriminatory governmental act is not immunized by the absence of such discrimination in the making of other comparable decisions, as in Arlington Heights versus Metropolitan Housing Development. I think it's very difficult to try and show a pattern and I don't believe that anything more than one example is necessary to show a pattern. I think, especially in this day and age, to have a pereptory utilized against an African-American, such as what occurred here, for the simple reason that he said he didn't like what she was wearing. Can the government ever exercise a peremptory of someone who's a minority race? Absolutely. So, I... Here, when the clear justification was, I thought that she said she knew people or had relatives in jail and who had been indicted and she could not, she didn't think she could be fair. That's arguably a basis for a challenge for cause, so why couldn't they exercise a peremptory under those circumstances and how have you established your burden of a prima facie case under those circumstances? Because when asked specifically during the objection period, during a break I believe it was, the assistant United States attorney indicated that it was because of what she was wearing. He didn't like her outfit and I think that's just a far stretch to suggest that that's the non-racial reasoning for use of a peremptory. I thought, page 780, he says one of the very first things she said when the district court raised the question of whether she could be fair was that she had people in the system. I believe you're sufficient and how can the government, back to my original question, if someone says they can't be fair, how can that ever be the basis for a Batson challenge? I mean, if someone says they can't be fair, as a district judge I would strike them for cause. Well, it certainly would have required additional questioning and follow-ups to that, but... Sure, for a cause strike, but not for a peremptory. I wouldn't question your judgment at all on that. Didn't the government also strike a white juror for the same reasons, basically? Yes, yes, but I think you have to be extra careful in striking people of the same race as a minority defendant, such as what we had here. But the government struck three people, right? And two of them were white. Right. I mean, it's not as if they're only striking black jurors. What stood out in my mind was the... Am I wrong in recollecting that there were still black jurors on the jury? I believe we had one or two. There were two. So, what's your closest case to a situation like this where a Batson challenge was sustained? Well, I think in this day and age it's time to draw the line, although it may be... Draw the line at what? At excusing minority jurors for reasons as innocuous as, I didn't like her outfit. Now, I agree there was discussion about her saying she couldn't be fair, but I don't... What if they gave three reasons and said, she said she couldn't be fair, she has people in the system, and I didn't like the way she was dressed for court? I think it's difficult to prove that there was any pattern or discriminatory conduct. You don't always have a John Gruden moment where you see something in writing that expresses the sentiments of... Don't you need more? I mean, it seems to me for a prima facie case, you have to have some evidence of discrimination, especially where this is their answer. Doesn't this cheapen Batson and make... I mean, because this is a really hard case to show a Batson challenge, I think. I don't disagree, but I think there's a time and a day for everything. You want us to be first, right? Correct, thank you, your honor. And with that, I'll reserve my moment. Thank you. A few minutes, thank you. You may, I'm sorry. Good morning. May it please the court, my name is Jamie Sirot, and I only have ten minutes. Not eleven. I'll be reserving four of them, your honor. We've raised numerous issues, and I don't think I have ten minutes to address each and every single one of them. I do want to touch upon a few of them. I'd like to start out by the facts of the case real quick. You read the briefs. I believe that this was, and it originally stood much to my surprise, I'm going, this was an individual that the Cleveland Police Department had no idea, knew nothing about. They arranged through a C.I. a sale, a $60 sale, and the sale takes place in a passenger side, there were two occupants in the car, the passenger is the one that actually delivered the drugs. I thought the C.I. said he reached across and gave him the drugs. Through the passenger side window. Right, no, I agree with that, but I thought he reached across. You're right, I wasn't done, I was going to say, and he said that. Okay. It's a $60 sale, basically. As a result of that, the car gets stopped. And detectives all testify. Well, that's a reasonable basis to stop the car. No doubt, I'm not arguing that. The question is whether they exceeded their authority. Keep in mind that Detective Mazur and all of them said that they were doing an inventory search. But what about, I thought they testified as to the marijuana smell. Well, I'm going to get there. But originally it was an inventory search. They find the marijuana smell, as they always do, of course, and they find the blunt of marijuana. There goes the smell of marijuana. But clearly, that was not enough. They kept looking, looking, looking, and you have to decide whether they exceeded. I thought they said there was still the lingering smell, even after they took the blunt out of the car. I think if I smell, I've never done it before, but if I was to smoke here, I think the smell would be on forever. We've said that's a justification, right? For what? To search the entire vehicle? Well, to search anywhere drugs could be found. I would disagree with that. I think they're limited to what they've. Where there's an automobile situation? There are exceptions, an automobile exception as well. I think that doesn't give them permission. It does not authorize them to remove parts of the vehicle to look. Well, didn't they say they saw through a crack? They thought it was an older car. That they looked something that wasn't right. Can I ask you another factual question? So in the government's closing, they say this was on the driver's side. At a different point, it says it's the center console. Is it accessible from the driver's side? Is the driver's side easier than the passenger's side? No, it's right in the middle. So the center console is in the middle. Why do they say in their closing, and I can ask them, but do you know? I don't know. I was not a trial counsel. I know it was in the center console. It's right in the middle. Which goes to the heart of, eventually, later on, I'm going to argue, the passenger could have. Anyway, we'll get there later on. I think they exceeded their authority because, again, the Cleveland Police Department policy of an inventory search is not allowed to do that. They could have gotten a warrant. The car wasn't going anywhere. Individuals have been arrested. But let's move on to what I think is a pretty significant argument that the introduction of the opinion testimony conclusions and ID from Detective Smith and Salupa were totally improper. I think that comes to the crux of this case. Who is Cousin D? And how do I identify Cousin D? Without an identification, they don't have a case. The conspiracy case. They could have the possession of the car or maybe the gun, possession of the gun, but not the conspiracy. And to that I mean. But why can't Detective Smith do this under Rule 901? Well, just because you have to look at what the government filed prior to trial, the intent, the notice of what he was going to say. It was a generic form. In generic form, he went beyond that. He basically was going through the mind of the individuals making the phone calls and testifying as to what the detective. Well, that's a different. Aren't those two different issues? There's a question about whether he could ID the voice. That's the 901 question, right? Then there's a question about whether he could on the stand interpret the. That's an expert. That's kind of a 701, 702 question, right? So just separate those for a second. I don't see, I guess going back to Judge Tappar's question, why is he not allowed to ID the voice? I mean, he listened to the phone calls. He has, I mean, under 901, he could be a witness that could ID the voice, right? I would agree with you. If he had heard that voice in the past, he's never heard the voice. Why? Where does that come from? Go ahead. No, no, I'm just. He never testified to that. He never heard the voice. But he doesn't have to under 901. How could you identify a voice that you've never heard before? Do you have the rule in front of you? No, I do not. Okay, let me read it to you. An opinion identifying a person's voice, whether heard firsthand or through mechanical or electronic transmission or recording, based on hearing the voice at any time under circumstances that connect it with the alleged speaker. So, he hears the voice on two separate calls. One to the jail, right? He hears the voice. Whether it's his or not, that's, he's going to give an opinion. And one with the CI. But does he really hear the voice? That's the question. Does he really hear the voice? I mean, he's listening to the phone calls. No, the CI's making a phone call. Okay, he's not listening. He's, I don't know how far away he was. The calls are recorded. No, no, I'm not talking about the jail calls. I'm talking his own personal ability to listen. That goes to the weight if he, but he said he heard it. And so it goes to his credibility and the weight. It doesn't go to the admissibility at that point. I don't, I didn't really hear it or not. He couldn't really hear it. And what do we do, wasn't there corroborating evidence about the phone number and this was the phone? I mean, there was other, you could piece it all together. I mean, this was just part of the, this was just part of the overall picture, right? If the passenger, Luther, would have had the phone, maybe he would have been cause and deed. The possession of a simple phone doesn't make you cause and deed. I'm not saying that any single one does it, right? I mean, this is just, again, goes to the weight. The jury decides or whoever the judge decides based on whatever's in front of them, right? Yeah, I don't remember him saying that, about listening to the voice. I was going to look through his testimony. Detective Smith was listening in on phone calls between Hall and Cousin Dee, who was later identified as Franklin, right? Well, I agree that he listened to all the phone calls, but how did he know that he was Cousin Dee if he's never heard Cousin Dee speak? Well, if he was monitoring the call, he was hearing Cousin Dee talk to Hall. But he didn't know who Cousin Dee was. I can listen to phone calls all I want. If I don't know who that individual is, it doesn't, I can't make the identification. I think in order to make the identification, you have to be familiar with the voice. Under the circumstances is the key language of the rule that connect. He finds him with the two phones that match the phone numbers made on the calls. He completes the drug transaction that was set up on the calls. He heard the voice, and then he listens to the jail calls. Those are circumstances under which he could form the conclusion, and then it goes to wait at that point. The question is whether it's an abuse of discretion under 901 to let it in. I just don't think he heard the voice. I would agree with you. If I'm listening to a phone call and I put two and two together, it's okay. But if somebody's sitting next to me... Just to cut to the chase because your time's up, your major beef with this is that you don't think he heard the voice on the calls with the CI. That's one of them. The other was the 702 that I can't get into. Do you want to use your rebuttal time? I will. Do you want to use it now or do you want to save it? I'll save it. Any other questions? Thank you. Counsel. Mr. Scott. May it please the Court, good morning, Your Honors. Bryson Gillard, appearing on behalf of the United States of America. To begin, I would just like to discuss the suppression motion, Your Honors. Just prior to this traffic stop, a controlled buy for crack cocaine and heroin was completed. Shortly thereafter, they pull over the Green Expedition. They smuggle marijuana. They remove the passengers. They find a bag of marijuana. They find a burnt marijuana cigarette. They remove all that. The strong odor still exists. Why not go get a search warrant at that point? Your Honor, given that fact that there was a controlled sale for cocaine and heroin and the fact that it's on a public roadway and it's very close in time to the controlled buy, I believe that the officers were justified in Didn't you have towed and inventoried the car at that point? Certainly, Your Honor, certainly. But there is This is not So take the inventory search theory off the table, or I assume, are you defending that? Are you defending that it's an inventory search? I was initially going down the route that the automobile exception justified the search of that cavity. Okay, and the inventory, or are we taking that off the table? Inventory as well, Your Honor. Okay, that one I'm skeptical of. Automobile? Automobile, though. Now, the state judge, do you read that opinion as also encompassing the automobile exception, or do you think that judge didn't look at that at all? I believe the judge tailored his argument based on the seizure of the vehicle in the inventory search, but he also did fit in language for the reasons raised in the government's brief, which in the government's brief we exhaustively and initially argued the automobile exception to be justified, as well as inventory search, as well as an inevitable discovery, Your Honor. However, I think the factual basis sort of lends where he does talk about there's probable cause to make the traffic stop, probable cause to arrest the occupants, and then based on Detective Mazur's training and experience with well over 1,000 traffic stops that hadn't manipulated center consoles like there were here, and where he recovered drugs, that there was probable cause to search behind that center console area. When he was able to flash a flashlight, and he could tell that the factory seal wasn't there, and then when he touched it, he could tell it was very easily moved. But once they found the marijuana cigarette initially, why was there any other cause to keep going? I believe because just immediately prior there was a sale for crack cocaine and heroin, and this detective was a part of the underlying investigation. So if you go back to March, about a month prior, he did a search warrant where the co-defendant in this case had well over 50 grams of a heroin-fentanyl mixture. So he had reason to believe that this was a large trafficker and that there should be additional traffic. So the marijuana smell was not, you could take the marijuana smell out of it. He was just justified in going through the car? No, the marijuana gave him justification. So in his mind he was looking for additional marijuana. He believed based on his prior training and experience that inside this cavity that there would be additional marijuana. And also part of his concern is there was no crack cocaine other than a small pebble, and there was no heroin that was found to that point. And based on his training and experience that they're hidden in this cavity, based on his previous traffic stops, he still wanted to see if there was heroin or crack cocaine in there. And ultimately, as your honors are aware, there was a substantial amount of heroin and crack cocaine. And also part of that heroin is a fentanyl and a fentanyl-analog mixture, which is very dangerous, which would necessitate them wanting to do that inventory as soon as possible while on the public roadway to protect the safety of not only the fellow officers, but as well as the safety of any passerby that could have been there that night. So I believe that that search is justified. Number one, I think primarily under automobile exception because the officer based on all the attendance. Are there cases that say an inventory search? Like basically we searched the car at the side of the road and that was an inventory search? I mean, I think of the paradigmatic cases. We tow the car to the yard, whatever, we inventory, whatever, you know, our procedure is to do this. This seems odd. Like it's right there and then you inventory it. I mean, they were just, they had the papers out and they were just checking off what they saw, what they found. I mean, that was, they were going through whatever procedure they were. It just sounds like they were searching the vehicle and later say, oh, yeah, we could have inventoried it, and that's what we're doing. So I believe there is, this court has decided previously, and I think it's the Jackson case, Your Honors, where an inventory that took place on the side of the road was justified, and that specific case the occupants of the vehicle were pulled over for a traffic stop and subsequently when asked to step out they had Heineken beers. During the search they also found that both occupants had suspended driver's license and further that one had an outstanding arrest warrant. They decided that the inventory search would be conducted on the roadway prior to towing it back to the station, and during that inventory search they searched under a torn rug, and this court found that that inventory search on the side of the road was justified, and I believe that those facts are somewhat analogous as the facts are here, where at this point both occupants were placed under arrest and that a determination was made that they were going to inventory and tow the vehicle. So they began the search there, and I think part of their justification beginning the search there was their concern about the dangerous substances, that being fentanyl. Fentanyl analogs are often cut with heroin, Your Honors. Oh, the fact, I mean, they didn't have to search it. It wasn't like it was going to be danger if somebody driving along was going to catch it. It's not like COVID.  Because I think even fentanyl, when it becomes airborne, it could be toxic to those who inhale it. So I think that's part of their concern is like we have this dangerous substance. We have probable cause because we just completed a controlled purchase of it, so we want to get this off and secure it as quickly as possible is the officer's mindset. But you have, I guess you have the argument that there would have been an inevitable discovery even if they had brought it in for an inventory search. That is correct, and that was also argued in the government's brief, and I think Judge Nugent in his ruling, I think it's page ID 679 through 680, mentions that they had probable cause to seize the vehicle as a criminal tool. Therefore, as Your Honor stated, that they ultimately would have found it, well, inevitably would have found it, Your Honor. So can I ask you about the center console? So the crack is on the driver's side, but it's accessible equally from both sides, right? Yes, Your Honor. So if you're the driver, it would be near your right leg. If you're the passenger, it would be near your left leg. Okay, so why, what's the evidence that this is Franklin's gun? In other words, what's your best argument that he constructively possessed the gun that was found? The best argument would be the controlled buy was purchased for him and that the confidential informant dealt with the man in the driver's seat. When officers pulled over the man in the driver's seat, it was Franklin. Furthermore, when he was searched, the pre-recorded buy money was recovered from him. Yeah, but none of that ties him to the gun. Well, this ultimately would tie him, so the vehicle is also registered to him as well. So under the premise that the drugs were- Did you, at the search hearing, I'm sorry to interrupt you, but at the search hearing you introduced evidence that the vehicle was owned by Franklin. That's correct, yes, Your Honor. But I don't think, was that ever introduced at the trial? It was not, Your Honor. Okay. But- So we can't consider that. That is correct, Your Honor. And so the last point you just made that it was registered or that didn't come out. No, it did not. The jury did not consider that, so you're correct, Your Honor. So we can't consider it. So all we can consider is that he's doing this drug deal and he's driving the car and that drugs and a gun are found in the car. But they're found in an area, the gun and drugs are found in an area equally accessible to both the passenger and the driver. That is correct. Well, I think the big inference that we argue that could be drawn is that these drugs were clearly under the control of the defendant. The controlled purchase was made from him. Subsequent search of him had the controlled buy money. The search of his cell phone clearly indicated that he's a drug trafficker. And since the drugs were his in close proximity to the narcotics, recovered was the firearm. So that's the inferential step that we made. Do you have a case that supports your position, that it's him as opposed to the passenger that possessed the gun? I do not, Your Honor. But however, I think that is, it sort of goes to the overall weight of the evidence presented to the jury as opposed to the misability of the gun being tied to him and something that counsel at the trial level could have very well argued in front of a jury. Can the same gun be possessed by two people if it's accessible to both of them? I believe so under the premise of the automobile exception. I believe you can tie one firearm to each occupant. So I think you're absolutely right, Your Honor. Is there a case that says that? Not that I'm aware of, no. I'm just curious. Yeah. Making up the law? No, just thinking of law school hypotheticals. So I do apologize. But I mean, if a gun's in a center console, one gun, but either person can reach it and use it, I mean, I don't know why they wouldn't both be in some sense legally in possession of it, but I don't know. Sure, sure. But like I discussed earlier, I think the primary thing that we connected the firearm was that his direct province control of the drugs and traffic to the drugs, and therefore that's why we connected the firearm. When you charged him with conspiracy, presumably the passenger had just as much control of the drugs and the like. Well, the conspiracies with defendant Hall, who was in charge of that. And others. Fair enough, Your Honor. But at the time, the primary scope of the conspiracy was with defendant Hall, which what connected him was the transfer of the customer phone in 9712, Your Honor. Can I ask a voice-related question? Certainly, Your Honor. Why didn't he have to hear the voice, actually hear the voice on his own, in order to make the 901 identification? So I think, as Your Honors pointed out earlier while my adversaries were here, it's like the rule says that so long as the listener heard the voice at any time. I think you also pointed directly, very important, is under circumstances tying the voice to the speaker. So during the investigation, obviously, the detective testified that he heard on multiple jails calls someone identify themselves as Cousin D. Once he heard that the customer phone was transferred, they set up controlled by. And that controlled by was the opportunity that he was able to listen to the voice. Now most importantly, thereafter, is under the circumstances tying the voice to the speaker. And that would be the fact that the controlled by money was found on Mr. Franklin. The fact that both cell phone numbers, 18941, is which defendant Hall was calling while in jail, was found on him, as well as the customer phone, 9712, of which they used to call to make the controlled by. But when you do this in court, when you're admitting this in the court, do you have to lay the foundation that the person who's identifying it has heard some example of the voice that everybody agrees is the voice? Either hears it in open court or, in other words, there's a control to compare what you heard before against. Is there some foundation that needs to be laid before you can testify that way? So I believe the foundation is just. So in this instance, he said that he was able to hear the call during the buy. I believe that that testimony alone is a sufficient. Right, but he can't see the person. It wasn't a FaceTime call, I presume. It was a normal call. Correct, and that's where the under circumstances tying the speaker to the voice comes into play. So your answer to Judge Nalbandian's question then is no. He doesn't have to hear it firsthand where he knows who it is speaking before he can make the comparison. That would be correct, and I believe that the ultimate conspiracy. Do you have a case for that? I do not, Your Honor. Do you have any case analogies to this where the person has never heard the voice before in person where they can identify him? I have not been able to find one, Your Honor. I mean, presumably you could hear him in some other circumstance or have some other snippet of the voice, or like we recorded this call after we brought him in. We know this is Franklin, and we will ask you to listen to this and then listen to this or testify based on listening to the call that everybody agrees is Franklin, that this was Franklin. I mean, that's what I'm asking about a foundation. It seems odd that you could then just bootstrap the first call and say, well, now I know that Cousin D is Franklin. Even though I've never heard his voice, I heard his voice there, and then we have this corroborating evidence, the phone, whatever it is. And I think that would lend itself, Your Honor, to just attacking the weight of the identification, Your Honor, as opposed to the domesticability, and I believe that's given the attendant circumstances that lended more weight to his identification. Well, I guess the two cell phones have a key link in here, don't they? They do. So the cell phone ending in 8941, there was a search warrant that was executed for the contents thereof, and found within that phone was a photo of an auto body receipt, which to the billable party read, O-R-Y, Franklin, which can be reasonably concluded that Greg part of it was cut off. So that's for the further corroboration, further attendant circumstances lending to that the voice was in fact Mr. Franklin. You know, one question I had, by the way, some of the exhibits, when you listen to the government turned over the transcripts of some of these phone calls, the jail calls, I mean, there's an exhibit 412 where Smith was interpreting the call, and it was about a man named Scoob. But then I didn't find any mention of Scoob in the transcript of the exhibit that the government provided. So the transcript was just a demonstrative. So the transcripts were not submitted to the jury. And furthermore, just one point in regards to the calls and his interpretation of the calls, the records, there was no objections to his expert testimony. Therefore, I believe that clear error review is appropriate. And I don't believe that's under that standard that there was any error that was made. And even so, that it was harmless given the totality of the evidence against the defendants. There is some, and Judge, I think Judge Gilman was asking about, there seems to be a little bit of a mix-up with what exhibit was being interpreted, I guess, and what at trial. And I don't know, I'm assuming that everything that was testified to was in some transcript or something. It wasn't. And you're correct. Even if the number didn't match. You're correct in saying this. I remember after the break of this witness, the government, we realized that there was some mix-up. Okay. So there may have been some transcripts that didn't exactly match with the calls. And I do apologize about that, Your Honors. Do you think, so on your second point, and I realize your time is up, but so if I am being, if I listen to a call and I'm testifying about my interpretation of that call, was that expert testimony at that point? Or was he just still being a recipient witness and giving some opinion that's not an expert opinion? You'll see as in, like, for example, in the government's exhibit 402, and during that call, there's discussion about how he's going to use someone else's pen. And that's well within the expert testimony that we based on his background, is that oftentimes individuals, when they become incarcerated, they use other people's pens. So I believe. So even though he heard that call, even though he heard that call firsthand, he's testifying as an expert in the way that he's interpreting the call? Yes. Okay. And their argument, your friend on the other side is saying, well, the jury should have been told at some point, not in the final instruction, but sometime during that, hey, he's testifying as an expert when he says this, as a fact witness when he's talking about some other aspects of the call. And I take it your point is they never raised that objection at trial, right? That is correct. And I believe that this court, I think it was the hand case, said that it was sufficient so long as the jury is instructed on the dual capacity that there is no error. During the final instruction? Yes, Your Honor. Okay. Yes, Your Honor. Any further questions? No. Thank you, counsel. Thank you, Your Honor. Mr. Jenkins? Thank you. I think you have five minutes. I won't need nearly half of that. Thank you. But I would indicate that I think a society is judged, perhaps, on how they treat the most disadvantaged within their communities, and Mr. Hall has certainly been behind the eight balls since birth. I know page 477 in the record would reflect what I want this court to certainly consider, and that is the disadvantaged nature of Mr. Hall's upbringing. I don't have the case law or the rules to support this aside from the suggestion from one in the know, the probation officer, who recommended a downward departure, which I believe was an abuse of discretion not to grant. Mr. Hall's brother was murdered in a robbery. Justice Gilman mentioned the schizophrenic disorder earlier. I told you he's diabetic. This young man had no chance growing up. I think that it was an abuse of discretion to not depart downward in the sentencing. Although it was a minimum guideline sentence, the range is off the hook. I know that we're not legislators here, and I do want to thank this panel for entertaining us and allowing me, affording me the opportunity to talk. Thank you. Thank you very much, counsel. Counsel, I think you have four minutes. I do. Thank you again. I was looking through my notes to find out exactly what Detective Smith said in relation to being able to identify the voice. The best he could do was it sounded like the same person. Is that sufficient to properly authenticate all those voices, all those phone calls? I don't think so. I believe that's a line that you have to decide whether that's sufficient. Do you have any case that supports that position? No, I do not. I think it's a decision that, and by the way, this was objected to. It's not one of those that didn't object to it. Are you asking us there to make a sufficiency determination or a 901 determination? Does that make sense, my question? Both. I don't know what I'm going to tell you. But you understand what I'm saying? Yes, I understand. You have to judge if that's sufficient. All I'm asking is, are you asking under the sufficiency of the evidence prong, because there are different inquiries, right? Right. Because one, you view it in the light most favorable to the government, da-da-da-da-da. And the other one, it's a pure abuse of discretion call. Correct. And so I'm just trying to understand where, and you're saying both. That's fair. It's both. Just because I truly believe that, first of all, to the sufficiency argument, it's not sufficient. I think it sounds like him. It's not sufficient to stand before the court under oath over counsel's objection to say, yeah, that's the same person. That's not enough. First of all, we don't know how long the phone call was. It could have been five seconds. It could have been two seconds. Are you there? Yeah, meet me at six, whatever it was. We have no idea. We don't have a transcript of that. We don't have a recording of that. We don't know how far away the CI was when the phone call was made. And that's the best he come up with. And you don't have a case for either Proposition A that it's, okay. I do not, sorry. No, that's okay. But also as to the gun issue, keep in mind that throughout this whole investigation, there was never mentioned that Cousin D had a gun. There was never mentioned that violence was used. And what upsets me the most, the way this trial, I didn't represent him at the lower court, was that the passenger, not only was he not charged, but he was, the counsel was precluded to inquire into anything about him. I don't know if you recall that or not. He was a bad dude. He had a long record. He was looking at several charges. That issue on appeal, though, right? Well, I'm going to the argument that you just stated, that he could have easily, an individual with that kind of record, could have easily had possessed a gun. What about Judge Nalvandian's point that they could jointly possess it? I don't have any case law to say yes or no, but I would argue that, I would argue, first of all, my client did not possess it. Okay? I would argue that my client did not have access, within the time of the phone call, and this goes to the- Was that a jury call at that point? No. I mean, you can argue he didn't possess it, but what case law do you have that says, in other words, does that make sense? In other words, for us, we're making a legal determination. Correct. The jury made the factual call. So you're saying insufficient evidence, the fact that it's next to him, that he dealt drugs, that there were drugs with it, and that we've always said guns and drugs go together. That's insufficient for a jury to find he possessed it. I guess I'm arguing also the 924C, which is, as you know, it's five years. Right. Okay. How much time? Would he have seconds to dismantle? Right, but it's- That's what I was arguing mostly about, the 924C. But it's possession during and in relation to a drug trafficking crime, and we've said a hundred times you can constructively possess a gun. The Supreme Court said that. Right. If it's in the car and you're dealing drugs. Not if it's dismantling. Not if it's you have to dismantle parts of the vehicle to get to that gun. Well, that's a different issue. That's the sufficiency of the search. If you can search, if the gun is there and accessible, then you can constructively possess it. It's in furtherance of the crime. I mean, this was a $60 deal. Okay. Wait, is that if it was only $10 that that would have been okay? No, absolutely not. That's not what I'm saying. I'm just going to keep going with the court's permission. It was a $60 deal, and they were apprehended almost immediately thereafter. That's my argument, that he not have access, ready, accessible to that gun when the crime was being committed. What's your best case for that, that in order to possess it, it has to be immediately accessible? Mackey? I don't know. I mean, the way you interpret Mackey, that's how I'll interpret it. And my time's up if you have any further questions. Thank you. Thank you, counsel. The case will be submitted. We appreciate all of counsel's thoughtful arguments. You may call the next case.